Ilsa KLINGHOFFER and Lisa Klinghoffer Arbitter, as Co–Executrixes of the Estates of Leon and Marilyn Klinghoffer, Plaintiffs,

v.

S.N.C. ACHILLE LAURO ED ALTRI–GESTIONE MOTONAVE ACHILLE LAURO IN AMMINISTRAZIONE STRAORDINARIA; Commissario of the Flota Achille Lauro in Amministrazione Straordinaria; Chandris (Italy) Inc.; Port of Genoa, Italy; Club ABC Tours, Inc.; and Crown Travel Service, Inc., d/b/a, Rona Travel and/or, Club ABC Tours, Defendants.

Sophie CHASSER and Anna Schneider, Plaintiffs,

v.

ACHILLE LAURO LINES, the Lauro Lines Flotto Achille, Chandris Cruise Lines and ABC Tours Travel Club, Defendants.

Viola MESKIN, Seymour Meskin, Sylvia Sherman, Paul Weltman and Evelyn Weltman, Plaintiffs,

v.

ACHILLE LAURO LINES, the Lauro Lines Flotto Achille, Chandris Cruise Lines and ABC Tours Travel Club, Defendants.

Donald SAIRE, and Anna G. Saire, Plaintiffs,

v.

ACHILLE LAURO ED ALTRI–GESTIONE M/N ACHILLE LAURO S.N.C., Commissario Lauro S.N.C. Commissario of the Flotto Achille Lauro in Amministrazione and Chandris, Inc., Defendants.

Frank R. HODES and Mildred Hodes, Plaintiffs,

v.

PALESTINE LIBERATION ORGANIZATION, An Unincorporated Association, John Doe, President, PLO, and Richard Roe, Treasurer, PLO, Defendants.

Donald E. SAIRE and Anna G. Saire, Plaintiffs,

v.

PALESTINE LIBERATION ORGANIZATION, An Unincorporated Association, John Doe as President and Don Roe as Treasurer of the Palestine Liberation Organization, Defendants.

Nos. 85 Civ. 9303(LLS), 85 Civ. 9708(LLS), 86 Civ. 4657(LLS), 86 Civ. 6332(LLS), 88 Civ. 7137(LLS), 88 Civ. 7281(LLS).

United States District Court, S.D. New York.

July 23, 1992.

Fischbein Badillo Wagner Itzler, New York City (Jay D. Fischer, of counsel), for plaintiffs Klinghoffer and Hodes.

Connell, Losquadro & Zerbo, New York City (Raymond A. Connell, of counsel), for defendant Achille Lauro.

Kirlin, Campbell & Keating, New York City (Daniel J. Dougherty, Mark P. McAuliffe, of counsel), for defendant Chandris.

Rubin, Hay & Gould, P.C., Framingham, Mass. (Rodney E. Gould, of counsel), for defendant Crown Travel.

Ramsey Clark, Lawrence W. Schilling, New York City, for defendant PLO.

## OPINION AND ORDER

STANTON, District Judge.

The *Klinghoffer* and *Chasser* cases were brought in late 1985, following the piratical hijacking of the vessel "Achille Lauro" in the Mediterranean Sea and the murder of Leon Klinghoffer by (plaintiffs claim) members of the Palestine Liberation Organization ("PLO") that October.

The vessel's owner moved for dismissal on the basis of forum-selection clauses in the tickets of passage, which provided that passengers' suits against the vessel's owner must be brought in Naples, Italy. This court denied the motion, concluding that:

> [A]s a whole … the ticket does not give fair warning to the American citizen passenger that he or she is renouncing and waiving his or her opportunity to sue in a domestic forum over a contract made and delivered in the United States. (Transcript 10/21/87, p. 5).

Defendants' appeal was dismissed on the ground that it was taken from a non-final interlocutory order. *Chasser v. Achille Lauro Lines*, 844 F.2d 50 (2d Cir.1988), *aff'd*, 490 U.S. 495, 109 S.Ct. 1976, 104 L.Ed.2d 548 (1989).

In the meantime, additional plaintiffs had sued (the 1986 *Meskin* and *Saire* cases and the 1988 *Hodes* and *Saire* cases) and the original defendants had asserted third-party claims against the PLO. After discovery, the PLO moved to dismiss for lack of subject matter or personal jurisdiction, insufficiency of service of process, failure to state a claim upon which relief can be granted and lack of capacity to be sued. This court denied that relief. *Klinghoffer v. S.N.C. Achille Lauro, etc.*, 739 F.Supp. 854 (S.D.N.Y.1990). It held, among other things, that the PLO could not claim immunity on the ground that its presence in New York arose from its function as a permanent observer at the United Nations, since the Headquarters Agreement gives it no such immunity and there is no charter in the federal courts for expanding that carefully drafted agreement, *id.* at 865, and that since the action was brought under federal law, the PLO had been properly served under Fed.R.Civ.P. 4 and 17(b)(1). *Id.* at 867.

The Court of Appeals accepted certification and the PLO's petition for appeal under 28 U.S.C. § 1292(b). 921 F.2d 21 (2d Cir.1990). Thereafter, it affirmed various rulings below, but vacated and remanded for further findings with respect to the question of personal jurisdiction over the PLO. 937 F.2d 44 (2d Cir.1991). It stated that but for the PLO's UN observer status its presence would not be allowed in New York at all (*id.* at 51):

> It is allowed to come to New York only because the Headquarters Agreement effectively removes control over the UN Headquarters and related areas from the jurisdiction of the United States. In other words, the PLO's participation in the UN is dependent on the legal fiction that the UN Headquarters is not really United States territory at all, but is rather neutral ground over which the United States has ceded control.

The Court of Appeals held that "more importantly, basing jurisdiction on the PLO's participation in UN-related activities would put an undue burden on the ability of foreign organizations to participate in the UN's affairs." *Ibid.* Recognizing the Judiciary's "reluctance to interfere with the smooth functioning of other governmental entities," it concluded that jurisdiction over the PLO could rest only upon its non-UN related activities, and remanded for determination whether those activities sufficed for the purpose. It noted that the evidence of those activities was limited to testimony taken before passage of the Anti–Terrorism Act, 22 U.S.C. §§ 5201–5203 (1988), which drastically restricted the PLO's activities within the United States. 937 F.2d at 52.

With respect to the service of process on the PLO, the Court of Appeals directed the district court to determine whether, under *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), the plaintiffs' substantive rights are those granted by Italian law, in which case Fed.R.Civ.P. 17(b)(1)'s provision allowing suits against unincorporated associations in their common names for the purpose of enforcing a United States federal substantive right would not apply, or whether United States maritime law governs, under which the service already effected is valid. In the former event, the service so far effected is invalid under the applicable New York rule, and the claims against the PLO must be dismissed without prejudice. 937 F.2d at 52–54.

The parties have briefed these points on remand. They have analyzed, but not supplemented, the record which was before this court on the original motion.

### Personal Jurisdiction

■ On the present record I make the following findings:

1. Following the standard set by the Court of Appeals, I reject the argument that these activities should be counted in determining whether the PLO's presence in New York suffices for jurisdictional purposes:

The actions of Dr. Edward Said, because they were not taken by him as a member of, or as acting on behalf of, the PLO.

The PLO's taxation of the salaries of its employees in New York, because those salaries did not derive from non-UN activities.

The receipt of contributions to the PLO by the New York office, because it returned those contributions to the donors and there is no evidence the donors thereafter contributed directly to the suggested PLO charities.

The PLO's participation from 1981 to 1984 in civil litigation to obtain a bequest, because that activity was too episodic and too distant in time from the service of process to be counted as doing business in New York for the purpose of this case.

2. There remain other PLO activities within New York, sufficiently separate from its UN activities that they may be considered in determining whether it was "doing business" in New York within the meaning of New York Civil Practice Law and Rules § 301: Mr. Terzi and others in the PLO's New York office gave speeches and interviews every month or so, to live audiences and in media appearances in New York. The PLO's New York office purchased informational pamphlets from various organizations, and generated their own informational materials and distributed them to those seeking information about the PLO. The Palestinian National Council (the legislative body of the PLO) solicited and secured Dr. Said's membership in the Council and mailed to him in New York information and airline tickets for the Council's annual meetings. These activities demonstrate a presence in New York that is not occasional or casual, but has a fair measure of permanence and continuity. *Laufer v. Ostrow*, 55 N.Y.2d 305, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 694 (1982). To some extent, which cannot be estimated on this record, the assets, facilities and personnel of the PLO in New York assisted in those activities. These activities suffice to meet the "doing business" standard for the period until passage of the Anti–Terrorism Act in 1988.

3. The burden is on the plaintiffs and third-party plaintiffs to demonstrate activities of the PLO within New York sufficient to establish jurisdiction over it. No evidence has been presented of such activities at the time of service of the 1988 *Hodes* and *Saire* complaints, which assert claims against the PLO only, and those plaintiffs are not entitled to the benefit of a presumption of continuity of such activities after passage of the Anti–Terrorism Act. Accordingly, those 1988 complaints are dismissed.

### Applicable Law

■ In *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), the Supreme Court considered whether the Jones Act or Danish law should apply to a seaman tortiously injured on a Danish vessel in Havana Harbor. The seaman had signed the ship's articles and joined her crew in New York.

The Court reviewed fundamental principles (345 U.S. at 577–78, 73 S.Ct. at 926):

> By usage as old as the Nation, such [maritime] statutes have been construed to apply only to areas and transactions in which American law would be considered operative under prevalent doctrines of international law.
>
> \*     \*     \*     \*     \*     \*
>
> And it has long been accepted in maritime jurisprudence that " \* \* \* if any construction otherwise be possible, an Act will not be construed as applying to foreigners in respect to acts done by them outside the dominions of the sovereign power enacting. That is a rule based on international law, by which one sovereign power is bound to respect the subjects and the rights of all other sovereign powers outside its own territory." Lord Russell of Killowen in the Queen v. Jameson [1896], 2 Q.B. 425, 430.

The Court then discussed several factors influencing the choice of law to govern a maritime tort claim:

1. *Place of the wrongful act.*

This was found to be "of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate" including the high seas, and thus usually "modified by the more constant law of the flag." 345 U.S. at 584, 73 S.Ct. at 929.

2. *Law of the flag.*

The Court described the rule which gives "cardinal importance to the law of the flag" as perhaps the "most venerable and universal rule of maritime law relevant to our problem" (345 U.S. at 584–85, 73 S.Ct. at 929–30):

> This Court has said that the law of the flag supersedes the territorial principle, even for purposes of criminal jurisdiction of personnel of a merchant ship, because it "is deemed to be a part of the territory of that sovereignty [whose flag it flies], and not to lose that character when in navigable waters within the territorial limits of another sovereignty."
>
> \*     \*     \*     \*     \*     \*
>
> It is significant to us here that the weight given to the ensign overbears most other connecting events in determining applicable law.

Here the law of the flag is the law of Italy.

3. *Allegiance or domicile of the injured.*

Here, the plaintiffs are of United States nationality. However, all the passengers aboard suffered injury to some degree, and a wooden application of this factor would invoke the laws of each of their separate home states. Thus it seems better in this case to regard each passenger's presence aboard the ship as one which "was transitory and created no such national interest in, or duty toward, him as to justify intervention of the law of one state on the shipboard of another." (345 U.S. at 587, 73 S.Ct. at 930).

4. *Allegiance of the defendant ship owner.*

This factor argues for the application of Italian law.

5. *Place of contract.*

In this case, the plaintiffs entered into their contracts of passage in the United

States. However, other passengers presumably did likewise in their own home states. As with the place of hiring of the seaman in *Lauritzen,* 345 U.S. at 588, 73 S.Ct. at 931:

> The place of contracting in this instance, as is usual to such contracts, was fortuitous. A seaman takes his employment, like his fun, where he finds it; a ship takes on crew in any port where it needs them. The practical effect of making the *lex loci contractus* govern all tort claims during the service would be to subject a ship to a multitude of systems of law, to put some of the crew in a more advantageous position than others, and not unlikely in the long run to diminish hirings in ports of countries that take best care of their seamen.

Nevertheless, if contract law were to be considered, it noted the contract's selection of governing law (345 U.S. at 589, 73 S.Ct. at 931):

> Except as forbidden by some public policy, the tendency of the law is to apply in contract matters the law which the parties intended to apply. We are aware of no public policy that would prevent the parties to this contract, which contemplates performance in a multitude of territorial jurisdictions and on the high seas, from so settling upon the law of the flag-state as their governing code. This arrangement is so natural and compatible with the policy of the law that even in the absence of an express provision it would probably have been implied. (footnote omitted)

In this case, the tickets specify the law of Italy.

**6.** *Inaccessibility of foreign forum,* and

**7.** *The law of forum.*

These factors do not operate in this case to bring under American law the governance of the attack upon an Italian vessel in Mediterranean waters. As the Supreme Court stated in *Lauritzen,* 345 U.S. at 591, 73 S.Ct. at 932:

> Jurisdiction of maritime cases in all countries is so wide and the nature of its subject matter so far-flung that there

would be no justification for altering the law of a controversy just because local jurisdiction of the parties is obtainable.

Given the predominant weight of factors favoring Italian law, and the strong deference accorded the law of the flag, it is clear that Italian rather than U.S. federal law applies to these cases.

Accordingly, the right sought to be enforced is not one "existing under the Constitution or laws of the United States," and the PLO may not be sued in its common name under Fed.R.Civ.P. 17(b)(1). The service thus far made upon it is ineffective.

## CONCLUSION

For the foregoing reasons, the Clerk will enter judgment dismissing *Hodes v. Palestine Liberation Organization, et al.,* 88 Civ. 7137 (LLS), and *Saire v. Palestine Liberation Organization, et al.,* 88 Civ. 7281 (LLS), for lack of personal jurisdiction over the PLO at the time those suits were commenced.

All claims asserted against the PLO in *Klinghoffer v. S.N.C. Achille Lauro Lines, et al.,* 85 Civ. 9303 (LLS), *Chasser v. Achille Lauro Lines, et al.,* 85 Civ. 9708 (LLS), *Meskin v. Achille Lauro Lines, et al.,* 86 Civ. 4657 (LLS), and *Saire v. Achille Lauro, et al.,* 86 Civ. 6332 (LLS), are dismissed without prejudice, for lack of personal jurisdiction because of ineffective service of process.

So ordered.

## ORDER

The motions of Crown Travel Service, Inc., Chandris Inc., and Lauro Lines, s.r.l., to dismiss claims and cross-claims or for summary judgment, and the opposition thereto, having been made in reliance upon domestic law only, and the court having in its opinion and order dated July 23, 1992 held that the governing law is that of Italy, the motions are denied without prejudice to renewal upon the same papers (without re-filing) by letter to the court accompanied by the parties' submissions with respect to the application of the law of Italy to the subject of the motions and, if applicable,

the substance of the law of Italy on the points presented.

So ordered.