Ilsa KLINGHOFFER and Lisa Klinghoffer Arbitter, as Co–Executrixes of the Estates of Leon and Marilyn Klinghoffer, Plaintiffs,

v.

S.N.C. ACHILLE LAURO ED ALTRI–GESTIONE MOTONAVE ACHILLE LAURO IN AMMINISTRAZIONE STRAORDINARIA; Commissario of the Flota Achille Lauro in Amministrazione Straordinaria; Chandris (Italy) Inc.; Port of Genoa, Italy; Club ABC Tours, Inc.; and Crown Travel Service, Inc., d/b/a, Rona Travel and/or, Club ABC Tours, Defendants.

Sophie CHASSER and Anna Schneider, Plaintiffs,

v.

ACHILLE LAURO LINES, The Lauro Lines Flotto Achille, Chandris Cruise Lines and ABC Tours Travel Club, Defendants.

Viola MESKIN, Seymour Meskin, Sylvia Sherman, Paul Weltman and Evelyn Weltman, Plaintiffs,

v.

ACHILLE LAURO LINES, The Lauro Lines Flotto Achille, Chandris Cruise Lines and ABC Tours Travel Club, Defendants.

Donald SAIRE, and Anna G. Saire, Plaintiffs,

v.

ACHILLE LAURO ED ALTRI–GESTIONE M/N ACHILLE LAURO S.N.C., Commissario Lauro S.N.C. Commissario of the Flotto Achille Lauro in Amministrazione and Chandris, Inc., Defendants.

Nos. 85 Civ. 9303 (LLS), 85 Civ. 9708 (LLS), 86 Civ. 4657 (LLS) and 86 Civ. 6332 (LLS).

United States District Court, S.D. New York.

March 29, 1993.

Fischer, Weisinger & Caliguire, Englewood Cliffs, NJ (Jay D. Fischer, of counsel), for plaintiffs Klinghoffer.

Connell, Losquadro & Zerbo, New York City (Raymond A. Connell, of counsel), for defendant Achille Lauro.

Kirlin, Campbell & Keating, New York City (Daniel J. Dougherty, of counsel), for defendant Chandris.

Rubin, Hay & Gould, P.C., Framingham, MA (Rodney E. Gould, of counsel), for defendant Crown Travel.

Ramsey Clark, Lawrence W. Schilling, New York City, for defendant PLO.

## OPINION AND ORDER

STANTON, District Judge.

Third party plaintiff Crown Travel Service, Inc. ("Crown") moves for an order pursuant to N.Y. C.P.L.R. § 308 confirming the propriety of service of process on third party defendant the Palestine Liberation Organization (the "PLO"), or directing substituted process.

### Background

The original defendants in this case, including Crown, filed third-party claims against the PLO, alleging its involvement in the 1985 hijacking of the vessel "Achille Lauro" in the Mediterranean Sea. Crown's amended third-party complaint names as defendants "John Doe # 1, as Treasurer of and John Doe # 2, as president of the Palestine Liberation Organization, an Unincorporated Association; and the Palestine Liberation Organization." Zehdi Terzi, the PLO's Permanent Observer to the United Nations, was served personally in New York. The PLO challenged the adequacy of that service and the court's jurisdiction over it.

By Opinion and Order dated June 7, 1990, this court rejected the PLO's contention that it is a sovereign state and thus immune from this suit. The court held that the definition of a "state" "does not fit the PLO closely enough to justify treating it as a foreign sovereign or state in this litigation," but rather, "for present purposes, it may be treated as an unincorporated association." *Klinghoffer v. S.N.C. Achille Lauro*, 739 F.Supp. 854, 858 (S.D.N.Y.1990). The court also held that the PLO's activities in New York, including its United Nations-related activities, were sufficient to subject the PLO to personal jurisdiction in New York.

Holding that even if foreign substantive law applied to the case, "it will be because federal law requires its use," the court found that the Federal Rules of Civil Procedure governed the PLO's capacity to be sued and the manner of service upon it. 739 F.Supp. at 866. It followed that the PLO could be sued in its own name by serving Mr. Terzi (who could be treated as a managing or general agent) pursuant to Fed.R.Civ.P. 17(b)[1] and 4(d)(3), rather than under the New York rule which requires naming and serving the president or treasurer of an unincorporated association. 739 F.Supp. at 866–67.

The Court of Appeals agreed that the PLO could be treated as an unincorporated association, but held that this court improperly considered the PLO's United Nations activities in finding the PLO subject to personal jurisdiction, and disagreed with the analysis of the choice of law and service of process issue. The Court of Appeals held that if choice of law analysis under *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed.

---

1. Rule 17(b) provides that an unincorporated association may sue or be sued in its common name for the purpose of enforcing a substantive federal right, and that otherwise, state law defines capacity to sue or be sued.

1254 (1953), requires application of Italian law to this case,

> no federal right would be involved, and Rule 17(b) would require the application of New York law with respect to the method of bringing suit against an unincorporated association. Thus, because New York law mandates serving the PLO's president or treasurer, service of process on the Permanent Observer would be inadequate, and the complaints would have to be dismissed.

*Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 54 (2d Cir.1991). Of course, such dismissal would be without prejudice. *Ibid.* Accordingly, the Court of Appeals remanded the case with instructions to determine whether the court has personal jurisdiction over the PLO and, if so, whether service of process on Mr. Terzi was sufficient.

On remand, this court found that the PLO was doing sufficient non-United Nations-related business within the state to make it "present" for purposes of New York long-arm jurisdiction when the cases brought before 1988 were filed, but those filed thereafter made no such showing and were dismissed. *Klinghoffer v. S.N.C. Achille Lauro,* 795 F.Supp. 112, 114–15 (S.D.N.Y.1992). This court also found that Italian law applies to the claims against the PLO, and followed the Court of Appeals, holding that accordingly, "[t]he service thus far made upon it is ineffective." 795 F.Supp. at 116. The claims against the PLO were therefore dismissed without prejudice for lack of jurisdiction, because of ineffective service of process. *Ibid.*

Crown now moves for an order either "confirming the propriety" of service on Mr. Terzi as a method of serving the PLO's president or treasurer, or directing alternative means of service.

In deciding that the service previously made on the PLO was ineffective, neither this court nor the Court of Appeals has considered or addressed Crown's present assertion that New York law permits alternative methods of service upon the president or treasurer of an unincorporated association, as natural persons, if ordered by the court. Accordingly, it is examined afresh.

## Discussion

■ Section 13 of the New York General Associations Law provides that "[a]n action or special proceeding may be maintained, against the president or treasurer of such an [unincorporated] association...." The rule is for the convenience of plaintiffs, who would otherwise have to name and serve all members of the association, *Martin v. Curran,* 303 N.Y. 276, 101 N.E.2d 683 (Ct.App.1951); *Coleman v. Pokodner,* 163 N.Y.S.2d 161, 164, 6 Misc.2d 955 (N.Y.Sup.Ct.1957), since an unincorporated association cannot be sued in its proper name under New York law. *Motorage Co. v. International Brotherhood of Teamsters,* 298 N.Y. 208, 212, 81 N.E.2d 91, 92 (Ct.App.1948).

■ Although Section 13 specifies the manner of service of process on labor unions, it does not specify a method of service on the president or treasurer of an unincorporated association other than a labor union.

> CPLR 304 states in relevant part that "[a]n action is commenced and jurisdiction acquired by service of a summons." The purpose of the summons is to notify the defendant named therein that the plaintiff seeks a judgment against him so that he may take such steps as may seem advisable to protect his interest.

*Connell v. Hayden,* 83 A.D.2d 30, 443 N.Y.S.2d 383, 389 (2nd Dept.1981) (citations omitted). Accordingly, since Crown's third-party claims are against the president and treasurer of the PLO, those persons must be served.

The New York Civil Practice Law and Rules ("C.P.L.R.") set forth the manner in which natural persons may be served. In addition to personal service, and certain methods of substituted service, C.P.L.R. § 308 permits service upon a natural person within the State of New York "in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section." Further, C.P.L.R. § 313 provides that service on persons outside the state may be made in the same manner as is made within

the state if such persons are subject to long-arm jurisdiction under C.P.L.R. § 301 or 302.

■ Since the president and treasurer of an unincorporated association are natural persons, and there is no provision which states that service of process in actions against the president or treasurer of an unincorporated association is made otherwise than on other natural persons, service upon them is governed by C.P.L.R. § 308.

The PLO argues that the absence of any specific provision for the manner of service on non-union unincorporated associations dictates that the plaintiff must personally serve the summons within New York State upon the association's president or treasurer, or else service cannot be made. The argument primarily arises from the 1961 amendment to Gen. Assoc. Law § 13 easing service of process on labor unions, which states:

> The service of summons, subpoena or other legal process of any court upon the president, vice president, treasurer, assistant treasurer, secretary, assistant secretary, or business agent, in his capacity as such, shall constitute service upon a labor organization. Such service shall be made on such individuals in the manner provided by law for the service of the summons on a natural person.

Since the amendment specifies only that service on labor union officers may be made in same manner as provided for natural persons, the PLO argues, service on non-union unincorporated associations must be made personally on the president or treasurer within New York State, or it cannot be made at all.

Furthering the argument, the PLO notes that, in addition to expanding the list of labor union officers who could be served, "the intent of the amendment was to provide and expand the method of service upon labor unions. Prior to the said amendment substituted service upon an unincorporated association could only be made by obtaining a court order." *Pickman Brokerage v. Bevona,* 149 Misc.2d 879, 568 N.Y.S.2d 287 (Sup.Ct.1991).

That appears to have been so because, before the 1961 amendment to Gen. Assoc. Law § 13, service of process was governed by the former New York Civil Practice Act, which specified that the only method of service on any natural person (other than an infant or incompetent) was personal service within New York. N.Y. C.P.A. § 225 (1942). Any substituted service required a court order pursuant to C.P.A. § 230. An order for substituted service, however, was only available for service on unincorporated associations "having a president or treasurer residing inside the state." *Ibid.* Therefore, prior to the adoption of the C.P.L.R., a president or treasurer of an unincorporated association residing outside New York could not be served as a natural person under C.P.A. § 225, nor by substituted service under C.P.A. § 230, nor did those officers qualify as natural persons doing business in New York State under C.P.A. § 229–b. *See Amon v. Moreschi,* 296 N.Y. 395, 399, 73 N.E.2d 716 (Ct.App.1947). However, section 232 of the C.P.A. provided that

> "[a]n order directing the service of a summons upon a defendant, by publication, may be made in either of the following cases:
>
> 1. Where the defendant to be served is a … joint stock association or other unincorporated association having a president and treasurer neither of whom is a resident of this state.… [2]

Thus, even before passage of the C.P.L.R., service on unincorporated associations with non-resident presidents and treasurers could be made by publication if ordered by the court.

■ Accordingly, it appears that service upon an unincorporated association, prior to the amendment expanding service on labor unions, was generally limited to personal service within the state because the existing provision for service on natural persons was limited to personal service within the state. Since service in New York is now governed by the C.P.L.R., which greatly expands the manner of service on natural persons, the

---

**2.** This provision was re-codified at C.P.A. § 232(1) (Supp.1963).

manner of service on the president or treasurer of an unincorporated association is likewise enlarged.

While the PLO argues that it cannot be served under New York law, it does not seriously dispute Crown's assertion that it would be impracticable to effect personal service, or "delivery and mail," or "nail and mail" service on the PLO's president or chairman Arafat or on Nizzar Abugazeleh (who performs a treasurer-like function in the PLO) in Tunis or wherever they may be found. Indeed, such service is manifestly impracticable. The service already made on Mr. Terzi has provided both Messrs. Arafat and Abugazeleh with notice of the action, in which the PLO has participated while reserving its rights, and the PLO would not be prejudiced by validation of the service already made. Accordingly, an order for substituted service of process in the manner already effected may be made *nunc pro tunc. See Morgan Guaranty Trust v. Hausen*, 183 A.D.2d 683, 584 N.Y.S.2d 65 (App.Div. 1st Dept.1992). Since there is a solid basis for jurisdiction already, and further notices would be no more than a burdensome and meaningless ritual, such an order is appropriate here.

### Conclusion

The service of process already effected on the PLO by serving Zehdi Terzi in New York is hereby authorized, *nunc pro tunc,* as of its original date.

So ordered.